UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| NICKIE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-619-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MONTGOMERY COUNTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Nickie Miller alleges that various state and county law enforcement officers framed him for the murder of Paul Brewer. Miller claims that, while he was awaiting trial, Defendant Keith Craycraft (the prosecutor in his case) participated in the destruction of exculpatory evidence. Craycraft has filed a motion to dismiss, which will be granted because he enjoys absolute immunity with respect to this claim.

**I.**

Paul Brewer was found dead in his home in Mount Sterling, Kentucky, on December 22, 2011. [Record No. 1, ¶ 21] Brewer's arms were strapped to a bed frame, and he had been shot twice in the head. Natasha Martin eventually told officers with the Montgomery County Sheriff's Office that she, Cody Hall (Martin's husband at the time), and Defendant Miller were involved in Brewer's murder. *Id.* ¶ 121. Martin reported that she, Miller, Hall and another woman went to Brewer's home. The women went inside and lured Brewer to a bedroom, where they tied him to the bed frame. According to Martin's statement, the women left the residence as Miller and Hall entered. Martin, who was apparently waiting outside, heard a

gunshot before the men exited. *Id.* ¶ 122. She advised law enforcement that she and the others went to Brewer's home to rob him and that she and the other woman were paid $340.00 for their participation. Miller maintains that that Martin's statements were coerced and that law enforcement knew at the time that the statements were false.

Miller was arrested on a criminal complaint for Brewer's murder on November 12, 2015. *Id.* ¶ 127. A grand jury returned an indictment against him approximately two weeks later, charging him with murder and being a persistent felony offender. *Id.* at ¶ 132. Hall and Martin were also indicted for the robbery and murder of Brewer, and were taken into custody.

While being held in the Montgomery County Detention Center, Hall and Martin exchanged correspondence in which Martin allegedly revealed that the police forced her to lie about Miller's involvement in Brewer's murder. *Id.* ¶ 156. Miller's defense attorney made a motion to obtain the correspondence between Hall and Martin. *Id.* ¶ 160. The Montgomery County Circuit Court issued a sealed order on June 15, 2017, requiring personnel of the Montgomery County Detention Center to retrieve the correspondence and produce it to the defense.

An investigator from the defense team arrived at the Montgomery County Detention Center around noon on June 15, 2017. *Id.* ¶ 164. The investigator informed jail staff of the court order and requested the correspondence between Martin and Hall. However, a jail staff member informed the investigator that Martin had already been released from custody. Miller alleges that a detention center employee called Martin the following day and advised her that an investigator had been there to retrieve her correspondence *via* a court order. *Id.* ¶ 169.

Miller contends that, after receiving the call advising her of the court order, Martin sought advice from Craycraft, who encouraged her to destroy the correspondence. *Id.* ¶ 170.

Telephone records confirm that Martin and Craycraft participated in a series of telephone calls on the afternoon of June 16, 2017. Hall, who was still in custody, placed a recorded call to Martin at on June 16, 2017, at 8:52 p.m. Martin advised Hall that the defense team "subpoenaed your mail and my mail . . . . I guess she went up to the Montgomery County Jail today to get mine and I wasn't there, so you know she threw ten kinds of hell, because my friend LaDonna was there. She works laundry." *Id.* ¶ 185. Hall then asked Martin where the letters were located. Martin responded: "Not here. I got rid of it. It's burnt." *Id.* ¶ 186.

Miller contends that Craycraft's alleged role in the destruction of exculpatory evidence caused him to remain in jail until charges against him were dismissed on November 21, 2017. *Id.* ¶ 204. Accordingly, Miller asserts, Craycraft's conduct amounted to a violation of his due process rights under the Fourth Amendment, for which he seeks compensatory and punitive damages under 42 U.S.C. § 1983.

## II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court makes all reasonable inferences in favor of the non-moving party, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007)). A district court may not grant a motion to dismiss because it does not believe the complaint's factual allegations, but conclusory allegations or legal conclusions

"masquerading as factual allegations" will not suffice. *Nwanguma v. Trump*, 903 F.3d 604, 611 (6th Cir. 2018) (citing *Twombly*, 550 U.S. at 555).

### III.

"State prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)). This is true even when the allegations involve "unquestionably illegal or improper conduct," as long as the general nature of the action in question is part of a prosecutor's normal duties. *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009) (citing *Imbler*, 424 U.S. at 413). Although absolute immunity may leave a genuinely-wronged defendant without civil redress against a prosecutor whose malicious or dishonest actions deprives him of liberty, "the broader public interest would be disserved if defendants could retaliate against prosecutors who were doing their duties." *Adams v. Hanson*, 656 F.3d 397, 401-02 (6th Cir. 2011) (citing *Imbler*, 424 U.S. at 427).

The Supreme Court has endorsed a "functional approach" to determine whether a prosecutor is entitled to this protection. *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Under this approach, the court looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* The official seeking absolute immunity has the burden of showing that such immunity is appropriate for the function in question. *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

To deciding whether Craycraft is entitled to absolute immunity, the Court must determine how closely related the alleged conduct is to Craycraft's role as an advocate, "intimately associated with the judicial phase of the criminal process." *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). "[A]dministrative duties and those investigatory functions

that do not relate to an advocate's preparation for the initiation of prosecution or for judicial proceedings are not entitled to absolute immunity." *Prince*, 198 F.3d at 611 (quoting *Buckley*, 509 U.S. at 273).

The line between advocacy and investigation is sometimes difficult to draw, but courts have provided guidance on this distinction. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000)). In determining into which category a prosecutor's conduct falls, courts must consider the "difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273.

The following prosecutorial activities have been deemed investigative or administrative in nature: "giving legal advice to police," "making out-of-court statements at a press conference," "making statements in an affidavit supporting an application for an arrest warrant," and "authorizing warrantless wiretaps in the interest of national security." *Koubriti*, 593 F.3d at 467 (citations and internal quotation marks omitted). *See also Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000) (prosecutor who searches for clues and corroboration to constitute probable cause for arrest performs an investigative function). Conversely, prosecutors have absolute immunity from suits involving inherently prosecutorial functions such as preparing for trial, even if such actions involve the use of perjured testimony. *Koubriti*, 593 F.3d at 467.

While the Sixth Circuit has not held that a prosecutor's intentional destruction of exculpatory evidence is a protected activity, it has concluded that prosecutors are immune from claims that they withheld exculpatory evidence from the defense. *Hatchett v. City of Detroit*,

495 F. App'x 567, 571 (6th Cir. 2012); *Koubriti*, 593 F.3d at 467. *See also Cady*, 574 F.3d at 340 (citing *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir. 1978) (holding that a prosecutor is absolutely immune from a suit claiming that he destroyed and falsified evidence)). Further, the court has extended absolute immunity to a prosecutor's alleged destruction of exculpatory evidence in an unpublished opinion. *Grogg v. State*, No. 18-5794, 2019 WL 386973, *4 (Jan. 7, 2019).

Here, Craycraft's alleged conduct was prosecutorial in nature. There is no suggestion that he was "investigating" anything when he allegedly advised Martin to destroy the exculpatory material. *See Rouse v. Stacy*, 478 F. App'x 945, 950 (6th Cir. 2012). While absolute immunity does not extend to prosecutorial actions performed without any "colorable claim of authority," those activities performed within a prosecutor's normal functions are protected, even if the prosecutor makes mistakes or acts with "excessive zeal." *See id.* at 955 (directing prison staff to "beat" an inmate was not protected prosecutorial activity).

Miller argues that Craycraft directed Martin to destroy the evidence because he knew probable cause did not support the pending charges against Miller. However, a grand jury had already indicted Miller for murder, so it can hardly be argued that Craycraft was looking to establish probable cause. Regardless, the absence of probable cause is not determinative of whether absolute immunity applies. *Howell*, 668 F.3d at 350. While a prosecutor does not act as an advocate before "he has probable cause to have anyone arrested," the focus remains on the prosecutor's function. *Prince*, 198 F.3d at 613. Although the conduct plaintiff alleges is inappropriate, it clearly falls within the scope of quintessential prosecutorial functions— dealing with witnesses and preparing for trial.

Because absolute immunity provides Defendant Craycraft complete protection from suit, the Court need to consider Craycraft's remaining arguments in favor of dismissal. Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Keith Craycraft's motion to dismiss [Record No. 17] is **GRANTED**.

2. Plaintiff Nickie Miller's claims against Craycraft are **DISMISSED**, with prejudice. The Clerk of the Court shall terminate Defendant Craycraft as a party to this action.

Dated: February 8, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge